2021 BNH 002
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:  
    Keith Michael Corson,  
        Debtor

Bk. No. 18-10191-PGC  
Chapter 7

# MEMORANDUM OPINION AND ORDER
# SUSTAINING CLAIM OBJECTION

## I.  INTRODUCTION

This dispute involves the question of whether a claim by a guardian ad litem against a debtor is entitled to priority treatment under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). [1]  Here, chapter 7 trustee Olga L. Gordon (the "Trustee") objects to the priority treatment of Ms. Rebecca S. McBeath, Esq.'s unsecured proof of claim in the amount of $4,076.25 (the "Claim") (Claim No. 10).  Ms. McBeath is an attorney who provided guardian ad litem services for the children of debtor Keith Michael Corson (the "Debtor") during his divorce proceeding.  After considering the submissions of the parties and the applicable law, I hereby sustain the Trustee's objection to the priority treatment of the Claim for the reasons set forth below.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "Code," "chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA").  References to the "Bankruptcy Rules" or "Rule" shall mean the Federal Rules of Bankruptcy Procedure.

## II. BACKGROUND

Before filing for bankruptcy relief in 2018, the Debtor and his then-wife were involved in a divorce action in the New Hampshire State Court.[2]  In December of 2015, the state court appointed Ms. McBeath as a guardian ad litem for the Debtor's minor children under New Hampshire law and ordered her to investigate and make recommendations about any issues that she deemed relevant to the children's best interests, including the Debtor and his wife's residential responsibilities for them; the Debtor and his wife's physiological conditions; and the influence of any companions of the Debtor and his wife on their children.[3] See Appointment Order, at 31-34.  The Appointment Order also required the Debtor to pay 75% of the total guardian ad litem fees accrued during the proceeding.  The Debtor owes Ms. McBeath $4,076.25 for her services.

Initially, the Debtor challenged the Claim, scheduling it as a disputed, unsecured, priority claim. (D.E. 19; D.E. 35-3).  However, by May of 2018, he filed a proof of claim on Ms. McBeath's behalf pursuant to Rule 3004, asserting that the Claim was entitled to priority treatment as a domestic support obligation under § 507(a)(1)(A) or (a)(1)(B) because it constituted his share of the guardian ad litem expenses ordered to be paid by the state court.[4] See Fed. R. Bankr. P. 3004; 11 U.S.C. § 507(a)(1)(A) and (a)(1)(b).

Approximately one year later, the Trustee filed a one-page objection to the Claim. (D.E. 139).  While the Trustee took no issue with the amount of the Claim, she asserted that it was not

---

[2] See In the Matter of Keith Corson and Doreen Corson, 618-2014-DM-00535, 7th Cir. Probate Division, Dover.

[3]  In response to my request during a hearing on the Trustee's objection on October 21, 2020, Ms. McBeath filed documents on October 21, 2020 in support of her Claim, including a copy of the state court's order appointing her as guardian ad litem (the "Appointment Order").  Although the evidence produced by the parties does not so specify, the Court assumes that Ms. McBeath was appointed as the guardian ad litem pursuant to N.H. Rev. Stat. § 461-A:16.

[4]  Although the Appointment Order initially capped Ms. McBeath's guardian ad litem fees at $2,000, the state court granted her motion to increase her fees in ¶21(g)(1v-v) of its final orders concerning the divorce between the Debtor and his ex-spouse (the "Divorce Order").  A copy of the Divorce Order is on the docket in this case at pages 12-28 of the papers filed by Ms. McBeath on October 21, 2020.

entitled to priority treatment and should be treated as a general, unsecured claim. She did not cite any legal authority or provide any evidence supporting her position. Ms. McBeath disagreed, maintaining that her Claim is entitled to priority treatment because it arises from legal services that she provided while serving as the state court-appointed guardian ad litem in the Debtor's divorce proceeding. She further argued that the Appointment Order approved the payment obligation of $4,076.25. In support, Ms. McBeath cited Kassicieh v. Battisti (In re Kassicieh), 482 B.R. 190 (B.A.P 6th Cir. 2012) for the proposition that guardian ad litem fees constitute domestic support obligations that are entitled to priority treatment under the Code. See 482 B.R. at 191 (affirming the bankruptcy court's finding that the guardian ad litem fees owed were nondischargeable domestic support obligations).

## III.  DISCUSSION

Under the Code, a claim filed pursuant to § 501 "is deemed allowed[] unless a party in interest . . . objects." 11 U.S.C. § 502(a). A properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The First Circuit has observed that merely objecting to a claim "does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993).

Here, there is no dispute that the Claim was properly filed and that the Trustee filed an objection to it. Her objection, however, is essentially limited to one conclusory sentence: "As grounds for this objection, the Trustee states that the claim is not entitled to priority and should be allowed as a general unsecured claim." (D.E 139). Though the Trustee did not provide any evidence or substantive law supporting her position and consequently has not done enough to divest the Claim of its presumptive validity, Ms. McBeath, as the party seeking priority treatment of the Claim, carries the ultimate burden of establishing that she is so entitled. See Mason v.

3

Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36, 41-42 (1st Cir. 2003) (stating that the granting of priority status to a claim "is contrary to the fundamental principle of bankruptcy law that the debtor's limited resources are to be distributed equally among similarly situated creditors . . . . [T]hus, statutory priorities are narrowly construed, and the burden of proving entitlement rests with the party seeking it.") (citations omitted); Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 5 (1st Cir. 1992) ("The burden of proving entitlement to priority payment as an administrative expense therefore rests with the party requesting it."); In re Plourde, 418 B.R. 495, 507 (B.A.P. 1st Cir. 2009) ("[E]ach creditor must demonstrate its entitlement to distribution at a particular level . . . . Otherwise, a claimant may be provided priority at a higher level than that to which it is entitled, watering down the dividend provided to creditors the legislation prefers. This would be contrary to the predominant goal of the Bankruptcy Code 'to secure equal distribution among [similarly situated] creditors.'") (citation omitted); In re Coco Beach Golf & Cty. Club SE, 2020 WL 1503528, at *6 (Bankr. D.P.R. Mar. 27, 2020) (stating that "[a] party seeking priority treatment has the burden of proving entitlement to statutory priority."), reconsideration denied sub nom. In re Coco Beach Golf & Cty. Club, SE, 2020 WL 4728366 (Bankr. D.P.R. July 24, 2020).

Determining whether a claim is a domestic support obligation entitled to priority treatment is a question of federal law. See Smith v. Pritchett (In re Smith), 586 F.3d 69, 73 (1st Cir. 2009).[5] Since the enactment of BAPCPA, two sections of the Code establish the framework through which courts evaluate these claims. Section 507(a)(1)(A) grants priority treatment to certain allowed unsecured claims for "domestic support obligations" if, "as of the date of the

---

[5] I am also aided by cases construing domestic support obligations under § 523(a)(5). See 11 U.S.C. § 523(a)(5) (excepting from discharge debts for domestic support obligations). "The examination to determine whether the debt is a domestic support obligation [under § 507(a)(1)] is the same as a § 523(a)(5) inquiry as they both seek to determine if the obligation is in the nature of 'alimony, maintenance or support.'" Smith v. Pritchett (In re Smith), 398 B.R. 715, 721 (B.A.P. 1st Cir. 2008), aff'd, 586 F.3d 69 (1st Cir. 2009). See also 11 U.S.C. § 507(a)(1).

filing of the petition in a case under [the Code], [they] are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person . . . ." 11 U.S.C. § 507(a)(1)(A).  Section 101(14A) defines a "domestic support obligation" as a debt:

> (A) owed to or recoverable by – (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent . . . ;
>
> (C) established . . . [by] a separation agreement, divorce decree, or property settlement agreement; [or] an order of the court of record; . . . *and*
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A)(A)-(D) (emphasis added).

     Not all courts agree on how to best analyze § 101(14A).  As one court observed regarding the related issue of examining the dischargeability of domestic support obligations:

> A review of both pre-and post-BAPCPA case law interpreting former and current § 523(a)(5) reveals that three lines of authority have emerged on the question of whether a debt that is in the nature of support and owed directly to a third party not listed among the entities identified in § 101(14A) (or former § 523(a)(5)) is excepted from discharge.

Kassicieh v. Battisti (In re Kassicieh), 425 B.R. 467, 472 (Bankr. S.D. Ohio 2010).  The first line of authority follows the "plain meaning" approach. Id.  This approach maintains "that the dischargeability of the debt turns on whether it is owed to a person/entity described in § 523(a)(5) (pre-BAPCPA) or payable to or recoverable by a person/entity described § 101(14A) (post-BAPCPA)[.]" Id.  The second line of authority reasons that "if a debt is in the nature of

5

support, it is nondischargeable even if payable directly to a third party and even if the debtor's spouse, former spouse or parent of his/her child would not be financially harmed if the debtor discharged the obligation[.]" Id.  Under this approach, "the nature of the debt rather than the [identity of] the payee is controlling . . . ." Kassicieh v. Battisti (In re Kassicieh), 467 B.R. 445, 450 (Bankr. S.D. Ohio), aff'd, 482 B.R. 190 (B.A.P. 6th Cir. 2012).  A third line of authority, which is more limited, "requires some ongoing liability of the debtor's spouse, former spouse, or parent of the debtor's child on the support obligation owing to a third party . . . ." In re Kassicieh, 425 B.R. at 472.  This approach focuses on whether "non-payment [of the ongoing liability] might have a financial impact on th[e] part[y] before [the debt] may be excepted from discharge." Id.

  I am uncomfortable with the second approach because it reads subsection (A), the list of people to whom the obligation is payable, out of the statute notwithstanding the conjunctive structure of § 101(14A). See 11 U.S.C. § 101(14A)(A).  The third approach is not applicable here because neither the Appointment Order nor the Divorce Order imposed ongoing liability for the Claim on the Debtor's ex-spouse or child.  Therefore, I believe that the "plain meaning" approach hews most closely to the intent of Congress and the controlling canons of statutory construction. See O'Brine v. Gove (In re Gove), No. 09-22405-JNF, 2011 WL 111155, at *6 (Bankr. D. Mass. Jan. 13, 2011) (stating that "[c]ourts have employed a four part test to determine whether [guardian ad litem] fees qualify as a domestic support obligation under 11 U.S.C. § 101(14A)") (citing Epstein v. Defilippi (In re Defilippi), 430 B.R. 1, 3 *n.7 (Bankr. D. Me. 2010)).

  Section 101(14A) is part of a coherent and consistent statutory scheme which is not unclear or vague.  As a result, I am tasked with applying the plain language of § 101(14A) in evaluating whether the Claim is a domestic support obligation entitled to priority treatment. See

United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989). See also Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . . When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (quotations and citations omitted).

The Claim easily satisfies two of the four requirements. The Trustee does not dispute that the underlying debt arises from fees for services that were established by a court order; nor does she allege that the obligation was assigned to a nongovernmental entity. See 11 U.S.C. § 101(14A)(C) and (D). Further, the uncontroverted evidence submitted by Ms. McBeath establishes these two facts. See Appointment Order, at ¶¶ 2-4; Divorce Order, at ¶21(g). Therefore, the Claim's priority treatment depends on the two remaining inquiries: whether the debt is in the nature of support for the debtor's children under § 101(14A)(B) and whether Ms. McBeath is an enumerated person under § 101(14A)(A)(i). See 11 U.S.C. § 101(14A)(A)(i) and (B).

A. Is the Claim "in the nature of support"?

Support is "what is given to provide for the upkeep of the recipient spouse and children." In re Gambale, 512 B.R. 117, 123 (Bankr. D.N.H. 2014) (quoting Werthen v. Werthen (In re Werthen), 329 F.3d 269, 273 (1st Cir. 2003)). While "[t]he First Circuit Court of Appeals 'has not adopted a specific multi-factor test' . . . to discern . . . whether a particular obligation [was intended to be] in the nature of support[,]" it "has stated that it is a 'fact intensive' inquiry that depends on 'the totality of the circumstances of a particular case.'" Id. (quoting Smith, 586 F.3d at 74). "[F]actors considered by other courts may inform [the Court's analysis of] the totality of the circumstances [in this case] . . . ." Id. Other courts consider:

7

> (1)[the] language and substance of the state court's order and thus the characterization of the payment in the decree and the context in which the disputed provisions appear; (2) the parties' financial circumstances at the time of the order and thus whether the recipient spouse actually needed spousal support at the time of the divorce; (3) whether an assumption of a debt or creation of an obligation has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are met and to ensure a home for the former spouse and any minor children; (4) whether the parties intended to create an obligation of support; (5) the function served by the obligation at the time of such order; (6) whether the labels given to the payments of the parties may be looked at as evidence of the parties' intent; (7) whether there was an imbalance in the relative income of the parties at the time of the divorce decree and thus whether the payment appears to balance disparate income; (8) whether the obligation terminates on the death or remarriage of either spouse; (9) whether the payments are made directly to the recipient spouse in a lump sum [or] are paid in installments over a substantial period of time; [and ] (10) whether the payments are to be made directly to the former spouse or to a third party.

In re Efron, 495 B.R. 166, 176 (Bankr. D.P.R. 2013) (collecting cases).

The uncontroverted facts presented by Ms. McBeath leave no question that the guardian ad litem fees that the Debtor owes to her are in the nature of support. Divorces often put children in the center of a maelstrom, requiring that their treatment and well-being be in the forefront throughout the proceeding. In New Hampshire, a divorce court is authorized to "appoint a guardian ad litem for a minor child when [it] has reason for special concern regarding the welfare of the child." N.H. Rev. Stat. Ann. § 461-A:16. See also Baillargeon v. Stacey (In re Stacey), 164 B.R. 210, 212 (Bankr. D.N.H. 1994) (noting that "[a] guardian ad litem is appointed as a party in a divorce proceeding to represent the best interests of the children throughout the proceeding") (citing N.H. Stat. Ann. § 458:17-a (1992) (repealed 2005 and recodified at N.H. Rev. Stat. Ann. § 461-A:16))). New Hampshire law vests a guardian ad litem with certain powers and obligations that are intended to serve and safeguard the best interests of a child. See N.H. Rev. Stat. Ann. § 461-A:16 (explaining that "[t]he role of the guardian ad litem shall be to

8

gather information to assist the court in determining the best interests of the child."); N.H. Rev. Stat. Ann. § 461-A:6 ("In determining parental rights and responsibilities, the court shall be guided by the best interests of the child . . . ."); N.H. Rev. Stat. Ann. § 461-A:1IV ("'Parental rights and responsibilities' means all rights and responsibilities parents have concerning their child."). Consequently, guardians ad litem are not passive observers. They actively investigate and make conclusions about a wide range of matters that affect the best interest of a child, including relationships, emotional and physical development, present and future needs, and the child's parents. See N.H. Rev. Stat. Ann. § 461-A:6. These observations and conclusions are critical to the state court's ability to determine parental rights and duties that promote the child's best interests.

A review of the Divorce Order in this case cements the conclusion that Ms. McBeath's services supported the Debtor's children during the divorce and custody proceeding. That order incorporates, in detail, Ms. McBeath's observations, concerns and conclusions about what is best for the Debtor's children. See Divorce Order, at 2-6. In addition, the state court underscored its reliance on Ms. McBeath's guardian ad litem work noting:

> "[t]he court was asked to meet the [children] . . . in camera, but it respectfully declines to do so. The [guardian ad litem] . . . has interviewed them, and articulated their preferences. An in camera meeting is not necessary, and may make the [children] . . . feel they are more in the middle and they already are."

Divorce Order, at 4. "[P]rotecting [a] child's interests in a custody battle is in the nature of support because of the obvious impact that the outcome will have on the emotional health and overall well-being of the child." In re Rackley, 502 B.R. 615, 626 (Bankr. N.D. Ga. 2013) (citing In re Ramirez, 2000 WL 356314, at *7 (Bankr. N.D. Ill. 2000) (explaining that "support for purposes of § 523(a)(5) is not limited to paying bills of the child, but encompasses many aspects of the child's well-being.")). See also In re Kassicieh, 467 B.R. at 451 ("It is nearly universally

recognized that when a state domestic relations court appoints a guardian ad litem to protect the interests of a child, the services provided by the guardian ad litem have the effect of providing support."); Kelly v. Burnes (In re Burnes), 405 B.R. 654, 658-59 (Bank. W.D. Mo. 2009) (finding that guardian ad litem fees owed by a debtor were in the nature of support and equating the fees with nondischargeable attorney's fees owed by a debtor to a former spouse's attorney).

B. Is Ms. McBeath an enumerated payee under § 101(14A)(A)(i)?

Turning now to the final question, is Ms. McBeath a person listed under § 101(14A)(A)(i)? See 11 U.S.C. § 101(14A)(i). I conclude that she is not. She is not a "spouse," "former spouse," "child of the debtor or such child's parent," "responsible relative" or "governmental unit." Although the term "legal guardian" might appear to be an umbrella term that could include a guardian ad litem, closer examination reveals otherwise.

The Code does not define the term "legal guardian," nor does § 101(14A) instruct courts to look to state law for guidance. See In re Rackley, 502 B.R. at 628.[6] See also Smith, 586 F.3d at 73 (1st Cir. 2009) (explaining that a claim's characterization as a domestic support obligation is controlled by federal law). However, even though state law is not controlling in this context, bankruptcy courts can look to it "for guidance in determining whether a particular obligation is in the nature of support or a property settlement; since virtually the whole subject matter of familial support is within the domain of state law and there is no federal law of domestic relations." In re Efron, 495 B.R. at 178.

Courts are also guided by rules of statutory construction. "In the absence of an express definition, a term contained in a statute should be given 'its ordinary meaning.'" Raridon v.

---

[6] "Although guardianship is a creature of state law, there is no reference to state law in [§] 101(14A). Congress showed in [§] 522(b)(2) that it knows how to make state law applicable in bankruptcy cases. The absence of any reference to state law in [§] 101(14A) points to the conclusion that the meaning of terms in that statute is a question of federal law." In re Rackley, 502 B.R. at 628 (citing In re Harrell, 754 F.2d 902, 904-05 (11th Cir.1985) (holding that the determination of whether a debt was in the nature of "support" in the pre-BAPCPA version of [§] 523(a)(5) was a question of federal law)).

Carlson (In re Carlson), 545 B.R. 229, 234 (Bankr. N.D. Ill. 2016) (quoting Clark v. Rameker, 537 U.S. 122, 127 (2014)). See also 2A Norman Singer & Shambie Singer, Sutherland Statutory Construction §47:30 (7th ed.) available on Westlaw (updated Nov. 2020) (stating "[l]egal terms in a statute have their legal meaning,[] absent legislative intent to the contrary,[] or other evidence of a different meaning, such as context or a statutory definition.[]") (footnotes omitted)); In re Greco, 397 B.R. 102, 110 (Bankr. N.D. Ill. 2008) (stating that "[i]n § 101(14A)(A), the words associated with 'legal guardian' are 'parents' and 'responsible relatives,' both of whom have custody and general responsibility for the children under their care. 'Legal guardian,' then, should be similarly interpreted.") rev'd sub nom. Levin v. Greco, 415 B.R. 663 (N.D. Ill. 2009).

  A "legal guardian" or "guardian" is different than a guardian ad litem. The term "legal" means "[o]f, relating to, or involving law generally; falling within the province of law[,] [e]tablished, required, or permitted by law; lawful . . . [or o]f, relating to, or involving law as opposed to equity." *Legal*, Black's Law Dictionary (11th ed. 2019). A "guardian" is "someone who has the legal *authority and duty to care for* another's person or property, esp. because of the other's infancy, incapacity, or disability [and may be] *appointed either for all purposes* or for a specific purpose." *Guardian*, Black's Law Dictionary (11th ed. 2019) (emphasis added). A "guardian ad litem" is a "guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." Id. Unlike a guardian or legal guardian, a guardian ad litem's role and authority is limited to the legal proceeding necessitating its appointment. See Uniform Guardianship, Conservatorship & Other Protective Arrangement. Act, § 102(9)-(10) (2017) (defining "guardian" as "a person appointed by the court to make decisions with respect to the personal affairs of an individual. The term includes a co-guardian but does not include a guardian ad litem[,]" and a "guardian ad litem" as "a person appointed to inform the court about,

11

and to represent, the needs and best interest of an individual."). Under New Hampshire law, a "guardian ad litem" is appointed by a court for the limited purpose of protecting the interest of a minor or an incompetent person in a case involving the termination of parental rights or when the court has reason for special concern regarding the welfare of the child. See N.H. Rev. Stat. Ann. § 170-C:2; N.H. Rev. Stat. Ann. § 461-A:16.[7] See also In re Lisa G., 504 A.2d 1, 5 (N.H. 1986) (stating that "[a] guardian ad litem is appointed to advocate a juvenile's best interests in a particular proceeding, and has none of the rights of a general guardian. R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 756 (1984).").  A guardian's duties and responsibilities are much more extensive. See In re Jack L., 20 A.3d 332, 336 (N.H. 2011) (noting in dicta the differences between a guardian and a guardian ad litem notwithstanding the parties' use of those terms interchangeably.). Moreover, under the Uniform Adult General Guardianship and Protective Proceedings Jurisdiction Act, a guardian is a "person appointed by the court to make decisions regarding the person of an adult, including a person appointed under RSA 464-A, and a guardian of the person as defined in RSA 464-A." N.H. Rev. Stat. Ann. § 464-C:2. In Chapter 464-A of the Revised Statutes of New Hampshire entitled "Guardians and Conservators," a guardian is one "appointed by the court to have care and custody of the incapacitated person as specified by a court order." N.H. Rev. Stat. Ann. § 464-A:2. New Hampshire's legislature underscored the difference between a "guardian ad litem" and

---

[7] At least two New Hampshire statutes note distinctions between guardians ad litem and legal guardians. See N.H. Rev. Stat. Ann. § 318-C:3 ("These babies, through their legal guardians and through court appointed guardians ad litem, should be able to recover damages from those in the community who have entered and participated in the marketing of the types of illegal drugs that have caused their injuries."); N.H. Rev. Stat. Ann. § 498-A:4 ("If the condemnee is a minor, an incompetent person, unknown, or is one whose whereabouts are unknown, the condemnor shall serve such notice upon the legal guardian of the condemnee. If there is no such guardian, the condemnor shall petition the board and request that a guardian ad litem be appointed to represent such condemnee.").

a guardian by providing that a "guardian ad litem shall have *none* of the rights of the general guardian." N.H. Rev. Stat. Ann. § 464-A:41 (emphasis added).[8]

Thus, based upon the commonly accepted legal meanings of the terms legal guardian/guardian and guardian ad litem, as well as the distinctions between those terms under New Hampshire law, I conclude that Ms. McBeath is not a "legal guardian" as contemplated by § 101(14A)(A)(i). Therefore, her Claim cannot receive priority treatment under the Debtor's plan.

A minority of other courts have reached similar conclusions. See Wischmeyer v. Bobinski (In re Bobinski), 517 B.R. 900, 904 (Bankr. N.D. Ind. 2014) (concluding that a guardian ad litem was a "legal representative/attorney" for a child and "[beyond] the scope of persons/entities defined by § 101(14A)(A) . . . ."); In re Greco, 397 B.R. 102, 107-08 (Bankr. N.D. Ill. 2008) (focusing on the plain meaning of § 101(14A)(A)'s enumerated payees). These two cases interpreted BABCPA's "[re]location of the statutory definition of 'domestic support obligation' to a new, more detailed [sub]section § 101(14A), to indicate an intent to limit the definition to debts owed directly to the specifically enumerated categories of payees found in [§101(14A)(A)]." In re Carlson, 545 B.R. at 233. I am aware that "both Greco and Bobinski were reversed on appeal on that point." Id. (citing In matter of Bobinski, 550 B.R. 417 (N.D. Ind. 2015) (reversing bankruptcy court's decision and noting that "[e]ven if the support inquiry were not emphasized over the payee requirement, [the guardian ad litem] would still be able to satisfy the payee requirement"); Levin v. Greco, 415 B.R. 663, 666 (N.D. Ill. 2009) (reversing bankruptcy court's finding that a debt owed to a child representative, which was equated to a

---

[8] Courts in other states reached similar conclusions. See Orr v. Knowles, 337 N.W.2d 699, 705 (1983) (stating that "[i]n short, the legal guardian is not the same as the guardian ad litem, as provided for in this statute."); Ex parte R.H. (In re Marshall Cnty. Dep't of Hum. Res.), 311 So. 3d 761, 770 (Ala. Civ. App. 2020) ("A guardian ad litem is not a legal guardian. See Ala. Code 1975, § 26-2A-20(7) (defining 'guardian' to exclude 'one who is merely a guardian ad litem'), and § 12-15-102(17) (defining 'legal guardian' to exclude a guardian ad litem). A guardian ad litem also is not a parent or a person acting as a parent under Ala. Code 1975, § 30-3B-102.[]").

guardian ad litem, was dischargeable, concluding that nature of guardian ad litem fees should be emphasized over the claimant's treatment as an enumerated payee)).  Indeed, most courts favor a broader reading of the statute.[9]  However, there is no such controlling authority in the First Circuit.  As explained above, § 101(14A) must be applied as it is written, which is in the conjunctive.  In order to qualify as a domestic support obligation, a term specifically defined by the Code, a claimant must establish all four subsections.  Ms. McBeath's inability to satisfy subsection (A) results in her claim not being entitled to priority treatment as a domestic support obligation.[10]

---

[9] See In re Rackley, 502 B.R. at 627 (concluding that the term "legal guardian" as used in § 101(14A) included a child's guardian ad litem in custody litigation); In re Kassicieh, 482 B.R. at 191 (affirming bankruptcy court's finding that that the fees owed to the guardian ad litem constitute a "domestic support obligation" under § 101(14A)); In re Gove, 2011 WL 111155 (discussing broader interpretation of § 101(14A)(A)); In re Rose, No. 08-30051, 2008 WL 4205364, at *2-9 (Bankr. E.D. Tenn. Sept. 10, 2008) (allowing a guardian ad litem to recover fees as a nondischargeable domestic support obligation under §§ 101(14A) and 507(a)(1)). See also Miller v. Gentry (In re Miller), 55 F.3d 1487, 1490 (10th Cir.1995) (finding that fees owed directly to guardian ad litem were nondischargeable and noting that "[to] hold a debt dischargeable simply because the money was payable to someone other than the spouse [or child], would be to put form over substance, in contravention of established bankruptcy law.").

[10] Unfortunately, this conclusion may create problems for guardians ad litem in New Hampshire who are involved with people who are in the shadow of an impending bankruptcy.  Although when Congress enacted BAPCPA it could have avoided these problems by including guardians ad litem in the list of payees in § 101(14A) or by inserting the phrase "including but not limited to" before that list, it instead chose to emphasize the limited subset of entitled payees.  Though I may believe that a more inclusive list would be preferable, my role at this point is limited: I must apply the law as written. See Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 994 F.3d 1341, 1352 (11th Cir. 2021) ("[O]ur obligation is to interpret the law as written, whether or not we think the resulting consequences are particularly sensible or desirable.").

## IV.  CONCLUSION

For the reasons stated herein, the Trustee's objection is sustained.  The Claim is allowed in the amount of $4,076.25 as an unsecured nonpriority claim.

ENTERED at Concord, New Hampshire.

Date:   May 21, 2021

/s/ Peter G. Cary
Peter G. Cary
United States Bankruptcy Judge
District of New Hampshire (by designation)